cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Richard Romero,<br><br>                Plaintiff,<br>v.<br><br>Stuart J. Ryan, Warden,<br><br>                Defendants. | Civil No.05cv1738 JTM (AJB)<br><br>**REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner, Richard Romero, a state prisoner proceeding through counsel, Fay Arfa, Esq., filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On May 29, 2008, Respondent filed an answer. On July 31, 2008, Petitioner filed a traverse. Based upon a review of the petition for writ of habeas corpus, Respondent's answer, Petitioner's traverse and all supporting documents, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED and DISMISSED for the reasons outlined below.

**Procedural Background**

On July 1, 2002, Petitioner was convicted of willful, deliberate and premeditated attempted murder in violation of California Penal Code §§ 664, 187(a), 190 and assault with a firearm in violation of California Penal Code § 245(a)(2). (Lodgment 1 at 199-201.) As to each offense, it was found that he personally used and intentionally discharged a firearm resulting in great bodily injury to the victim in

violation of California Penal Code §§ 12022.5(a)(1), 12022.53(d), 12022.7(a). (Id.) On October 18, 2002, the trial court sentenced Petitioner to twenty-five years to life. (Id. at 281-82.)

On March 29, 2004, the California Court of Appeal affirmed in part and reversed in part with directions. (Lodgment 5.) The California Supreme Court denied the petition for review on June 9, 2004. (Lodgment 7.) On September 7, 2005, Petitioner filed a habeas corpus petition in this Court. On October 16, 2007, Respondent filed a motion to dismiss the petition as untimely. (Dkt. No. 33.) On December 26, 2007, the court issued a report and recommendation denying respondent's motion to dismiss. (Dkt. No. 37.) On March 5, 2008, District Judge Miller adopted the report and recommendation as modified and dismissed claims 1, 2, 3, 9 and 10 as time-barred. (Dkt. No. 40.) On May 29, 2008, Respondent filed an answer. Petitioner filed a traverse on July 31, 2008.

## Factual Background

The following factual background is taken from the Court of Appeal opinion in People v. Richard Romero, unpublished opinion (Cal. Ct. App., 4th Dist., Div. 1, March 29, 2004). The Court presumes these factual determinations are correct pursuant to 28 U.S.C. § 2254(e)(1).

> About 2:55 a.m. on February 8, 2001, a San Diego County deputy sheriff pursued a car speeding on Skyline Avenue in Lemon Grove. While in pursuit, the deputy heard a radio call that a shooting had just occurred in the area and realized he could be pursuing the shooter. When the car came to a stop at a dead-end street, the passenger, wearing dark clothing and a beanie, fled on foot. The deputy arrested the driver, Luis Arechiga.
>
> In the meantime, sheriff's deputy who had responded to the scene of the shooting found Steven Courtney on the ground outside a car, severely injured, unconscious and bleeding from numerous bullet wounds. Paramedics transported Courtney to a hospital, where he remained in a coma for several months.
>
> During the subsequent investigation, police interviewed Arechiga, among others, and determined Romero was the owner and passenger of the car that had been pursued by the deputy sheriff in the early morning hours of February 8. Officers found gunshot residue on the exterior passenger door handle of the car and a handgun lying about 200 yards from the car in the direction Romero had fled. The bullet casings and fragments recovered from the scene of the shooting were consistent with the handgun found near Romero's car. Almost a year after the shooting, Romero turned himself in and was charged with attempted murder and related crimes arising out of the incident.
>
> At trial, the jury heard testimony from numerous witnesses including: Courtney; Arechiga, who testified under a plea agreement as an accessory to the shooting; and the police officers and detectives who responded to and investigated the shooting. The prosecution testimony revealed Romero and several men had spent the afternoon before the shooting drinking beer at a tattoo parlor. Sometime during the evening, Courtney joined them. About 10:00 p.m., the men went to a

> bar near Old Town where they continued drinking alcohol. At some point, a fist fight unexpectedly broke out between Romero and Courtney inside the bar and continued in the parking lot after they were evicted from the bar by bouncers. When the fight ended, Romero's face was bleeding and his shirt was torn. Romero threatened to kill Courtney. After Courtney left the scene, police arrived and detained Romero until he was "no longer in an agitated state."
>
> Romero and his friends then returned to the tattoo parlor to clean up. Romero had a beer and made some calls to find out where Courtney lived. Romero changed into dark clothes and a beanie, and asked Arechiga to drive him "to some girl's house" in Spring Valley because he was too drunk to drive. Romero told Arechiga which streets to take, directed him to Courtney's house, and told him to stop near a parked car where Courtney was sitting as a passenger. Romero got out of the car, walked up to the passenger window of the other car and shot Courtney five times with a revolver in the neck, chest, arm and lower back. Arechiga heard the gunshots but did not see Romero shoot Courtney. Romero got back into the car and told Arechiga to flee the scene.
>
> When Arechiga was arrested, he told police that Romero had been his passenger and had been dressed in dark clothing and a beanie. Courtney and the driver of the car in which he was shot also testified to the events of that night, describing the shooter as tall and wearing dark clothes and a beanie, which was consistent with Arechiga's description of Romero. Romero did not testify. Rather he called several witnesses, including his sister, to provide alibi and mistaken identity defenses. A friend testified he had been with Romero at the tattoo parlor and had driven him to Romero's parents' home after the fight with Courtney. Romero's sister confirmed he had come to their parents' house that night with a bloody face. She testified that Romero traveled with her and her boyfriend the next day to El Centro where he stayed for several days. A forensic expert testified in Romero's defense that none of the useable fingerprints from his car driven by Arechiga matched Romero's fingerprints. The expert also criticized the sheriff's investigation of both Romero's car and the shooting scene.

(Lodgment 5 at 3-5.)

## Discussion

Petitioner raises five claims in his petition. First, he claims the prosecutor violated Petitioner's federal due process rights by improperly eliciting highly prejudicial "mug shot" evidence informing the jury about Petitioner's prior criminality. Second, he claims that the trial court denied Petitioner due process and a fair trial by jury by failing to instruct the jury on the lesser necessarily included offense of attempted voluntary manslaughter. Third, he asserts that the trial court denied Petitioner due process and a fair trial by failing to properly instruct on the essential element of malice aforethought. Fourth, he argues that he received ineffective assistance of counsel when trial counsel failed to request instructions on voluntary intoxication. Fifth, he maintains that he received ineffective assistance of counsel when trial counsel failed to request jury instructions on attempted voluntary manslaughter, malice afore-

thought, and provocation. Lastly, he claims that the trial court denied Petitioner equal protection of the law by imposing a 25 year to life punishment for firearm use during the commission of attempted murder.

**A.      Scope of Review**

28 U.S.C. § 2254(a) provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). As amended, the AEDPA now reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application</u> of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 403 (2000). The threshold question is whether the rule of law was clearly established at the time petitioner's state court conviction became final. <u>Id.</u> at 406. Clearly established federal law, as determined by the Supreme Court of the United States "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003). However, Ninth Circuit case law may be "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.'" <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 2000). Only after the clearly established Federal law is identified can the court determine whether the state court's application of that law "resulted in a decision that was contrary to, or involved an unreasonable application of" that clearly established Federal law. <u>See</u> <u>Lockyer</u>, 538 U.S. at 71-72.

A state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams, 529 U.S. at 405-406. "A state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. Under Williams, an application of federal law is unreasonable only if it is "objectively unreasonable." Id. at 409. Further, a state court's decision results in a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding" if it "is so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997) (citations omitted).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). A state court need not cite Supreme Court precedent when resolving a habeas corpus claim. Early v. Packer, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" id., the state court decision will not be "contrary to" clearly established federal law.

**B.    Prosecutorial Misconduct**

Petitioner claims that the prosecution violated his due process rights by eliciting testimony regarding "mug shot" evidence informing the jury of his prior criminality. At trial, on direct examination of the detective who had interviewed Arechiga, the detective testified that Arechiga identified Petitioner from Petitioner's mug shot which the detective obtained from the Sheriff's Departments' computer mug file. (RT 273-74.) Later at trial, it was revealed that the detective had shown Arechiga a photograph of Courtney, not Petitioner. The detective stated that he had mistakenly represented that he had shown Arechiga Petitioner's photograph and in fact, it was Courtney's photograph that was shown to Arechiga in the interview. (Id. at 333.)

The clearly established constitutional standard governing prosecutorial misconduct claims is "the narrow one of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)). "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). Therefore, under this standard, the question is whether the prosecutors' misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. at 642). In determining if Petitioner's due process rights were violated, the Court "must consider the probable effect of the prosecutor's [conduct] on the jury's ability to judge the evidence fairly." United States v. Young, 470 U.S. 1, 12 (1985). Relief is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. Johnson v. Sublett, 63 F.3d 926, 930 (1995) (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)). Put another way, prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir.1996).

California courts have not established a rule that any photograph of an accused which incidentally suggests that he has a prior criminal record is inadmissible. People v. Cook, 252 Cal. App. 2d 25, 29 (1967). Mug shots are admissible if the probative value is greater than its prejudicial value. See People v. Peralez, 14 Cal. App. 3d 368, 377 (1971). "Except when it shows merely criminal disposition, evidence which tends to establish a fact material for the prosecution is admissible although it may connect the accused with an offense not included in the charge." Cook, 252 Cal. App. 2d at 28 (citation omitted). The court explained that the identification of an accused as a perpetrator of the crime charged is a "fact material for the prosecution" and a photograph is relevant evidence of identification. Id. at 29.

In the instant case, the California Supreme Court denied Petitioner's petition for review in an order containing no reasoning for its decision. (Lodgment 7.) Therefore, this Court must look to the last reasoned state court decision and presume that the unexplained opinion rests upon the same ground. See Ylst, 501 U.S. at 803. The last reasoned state court decision was issued by the Court of Appeal on March 29, 2004. (Lodgment 5.)

The Court of Appeal concluded there was no due process violation because the reference to the "mug file" was brief, it was not used in closing arguments and the photograph was not admitted into evidence. (Lodgment 5 at 7-8.) Moreover, the court concluded that the evidence was very strong against Petitioner that there was no reasonable probability a result more favorable would have been reached if the jury had no knowledge of his prior arrest through the detective's reference to Petitioner's mug shot. (Lodgment 5 at 9.)

The Court agrees that there was no prejudice to Petitioner. There was plenty of evidence that Petitioner was at the shooting scene at 2:30 a.m. As the Court of Appeal noted:

> Courtney testified Romero threatened to kill him after the bar fight; Arechiga also testified Romero threatened Courtney; Jason Simpson testified Romero called him on his cell phone after the bar fight and asked where Courtney was and where he lived (Simpson did not give Courtney's address to Romero, implying Romero must have contacted others to find out where he lived); Arechiga testified Romero asked him to drive Romero to "some girl's house" in Spring Valley, Romero directed him to Courtney's house, where Romero told him to stop, Romero got out of the car, Arechiga heard gunshots, and Romero returned to the car and told Arechiga to flee. Deputy Joseph Leos testified that he pursued a car registered to Romero but driven by Arechiga speeding from the area of the shooting about 3:00 a.m., and when the car stopped, the passenger, wearing dark clothes and a hat, fled; Arechiga told the deputy the passenger's name was "Rich." Gunshot residue was found on the exterior passenger door handle of the car, and bullet casings and bullet fragments recovered from the scene and Courtney's blood were consistent with the handgun found along the path where the passenger fled, placing Romero's car and its passenger at the shooting scene.

(Lodgment 5 at 9-10.) These facts provide significant evidence that Petitioner was the perpetrator of the crime. Even if the reference to the "mug shot" was not made at trial, it would not have changed the outcome of the trial. Therefore, Petitioner did not suffer any prejudice. See Johnson, 63 F.3d at 930. Accordingly, the state court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law." See 28 U.S.C. § 2254(d)(1). The Court RECOMMENDS that Petitioner's claim of prosecutorial misconduct be DENIED.

**C.    Trial Court Error on Failure to Instruct on Lesser Included Offense of Attempted Voluntary Manslaughter**

Petitioner argues that the trial court violated his due process and right to a fair jury trial by failing to instruct on the lesser included offense of attempted voluntary manslaughter.

The Supreme Court has expressly declined to decide whether a non-capital defendant has the right to have the jury instructed on a lesser included offense. Beck v. Alabama, 447 U.S. 625, 633 n.8

(1980); Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) ("Under the law of this circuit, the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question.") Because there is no clearly established federal law requiring the giving of a lesser included offense instruction, Petitioner is not entitled to relief on his claim. Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004) (because the Supreme Court has not decided whether the Fourteenth Amendment incorporated the Sixth Amendment's vicinage right, the state court's decision could not be "contrary to" or an "unreasonable application of" clearly established Supreme Court law "simply because no such law exists."); Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.")

Even if Petitioner is entitled to a jury instruction on a lesser included offense, he has failed to show that the trial court was presented with evidence demonstrating heat of passion that would warrant an instruction on attempted voluntary manslaughter. Petitioner claims that there were sufficient facts to show he acted in the heat of passion because shortly before the shooting, Courtney hit Petitioner and started a fight. Petitioner claims he became angry and the shooting occurred shortly afterwards.

The Court of Appeal held that there was no evidence to show that the act was committed in the heat of passion. (Lodgment 5 at 13.) In fact, the intervening events between the bar fight and the shooting demonstrates a cooling of passion. (Id.) After the fight, the police detained Petitioner until he was "no longer in an agitated state." (Id.) Petitioner went back to the tattoo parlor to clean up, change his clothes, had a beer and made telephone calls to find out where Courtney lived. (Id.) Petitioner then obtained a gun and asked Arechiga to drive him to Courtney's house. (Id.) When Petitioner found Courtney in the passenger seat of a parked car, Petitioner had Arechiga stop, he got out of the car, walked up to the window of the car and shot Courtney repeatedly in the neck and back. (Id.)

The evidence demonstrate that sufficient time had elapsed between the bar fight and the shooting and the heat of passion to shoot Courtney had subsided. Therefore, the trial court did not err in failing to instruct on the lesser included offense of attempted voluntary manslaughter. Accordingly, the state court's decision was not "contrary to, or involved an unreasonable application of, clearly established

Federal law." See 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief on this claim and the Court RECOMMENDS that Petitioner's claim of trial court error be DENIED.

**D.     Trial Court Error on Failure to Instruct on the Essential Element of Malice Aforethought**

Petitioner argues that the trial court failed to properly instruct on the element of malice aforethought. He claims that malice aforethought should have been defined as follows: "malice aforethought equals a specific intent to kill in the absence of sudden quarrel, heat of passion, and imperfect self-defense." (Pet. at 26.) Petitioner contends that the People should prove the absence of sudden quarrel or heat of passion to establish the malice element of murder.

In Cupp v. Naughten, 414 U.S. 141 (1973), the United States Supreme Court presented the standard for jury instruction error in habeas cases. The only question for a federal habeas court is whether, "under the circumstances as a whole and given the evidence in the case, the failure to give the requested instruction rendered the trial so fundamentally unfair as to violate federal due process." Duckett v. Godinez, 67 F.3d 734, 746 (1995) (citing Cupp, 414 U.S. at 147). A single jury instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp, 414 U.S. at 146-47. "An omission . . . is less likely to be prejudicial than a misstatement of the law" and the petitioner bears an "especially heavy" burden. Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

In People v. Rios, the Court held that where murder is charged and evidence of provocation or imperfect self-defense is presented to the jury, the People must prove beyond a reasonable doubt that these circumstances were lacking in order to establish the malice element of murder. People v. Rios, 23 Cal. 4th 450, 462 (2000).

The trial court instructed the jury on CALJIC 8.66 which defines attempted murder in part as "[t]he person committing such act harbored express malice aforethought, name, a specific intent to kill unlawfully another human being." (Lodgment 1 at 169.) In addition, the jury was instructed on CALJIC No. 8.67, which stated in part,

> [i]f you find that the attempt to commit murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is an attempt to commit willful, deliberate, and premeditated murder.

(Id. at 171.)  In the same instruction, the jury was instructed that "a mere, unconsidered and rash impulse, even though it includes an intent to kill, is not deliberation and premeditation."  (Id.)

The Court of Appeal concluded that the trial court properly instructed on express malice aforethought.  (Lodgment 5 at 15-16.)  The Court agrees that the trial court did not have to *sua sponte* duty to instruct the jury on the absence of heat of passion or sudden quarrel in its definition of malice aforethought.  There was no evidence of a sudden quarrel or heat of passion to warrant such an instruction.  The evidence shows that the shooting did not take place immediately after the bar fight between Petitioner and Courtney and much time had passed to allow Petitioner to cool down.  After the fight, the police detained Petitioner until he was "no longer in an agitated state," Petitioner returned to the tattoo parlor, cleaned himself up, changed his clothes, made telephone calls to locate Courtney's address and directed Arechiga to Courtney's house, identified the parked car where Courtney was a passenger, approached the car window and shot Courtney in the face and neck.  (Lodgment 5 at 4-5.)  These facts do not show that Petitioner acted in the heat of passion or immediately after the provocation.

The Court concludes that the trial court's failure to instruct on Petitioner's definition of malice aforethought did not infect the entire trial such that Petitioner's due process rights were violated.  See Cupp, 414 U.S. at 147.  Accordingly, the state court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law."  See 28 U.S.C. § 2254(d)(1).  Habeas relief should not be granted as to his claim and the Court RECOMMENDS that Petitioner's claim for trial court error be DENIED.

**E.     Ineffective Assistance of Counsel**

Petitioner argues that he was denied effective assistance of counsel when counsel failed to request instructions on voluntary intoxication, provocation, attempted voluntary manslaughter and express malice aforethought.

The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Baylor v. Estelle, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that Strickland "has long been clearly established federal law determined by the Supreme Court of the United States"); Jones v. Wood, 114 F.3d 1002, 1013 (9th Cir. 1997).  A habeas petitioner must satisfy two requirements to demonstrate his assistance of counsel was

so defective that habeas relief is warranted.  First, the petitioner must show that counsel's performance was deficient.  Strickland, 466 U.S. at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Second, the petitioner must show counsel's deficient performance prejudiced the defense.  Id.  The test for prejudice requires that the defendant show that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  Id. at 694.  In other words, petitioner must demonstrate his counsel's error rendered the result unreliable or the trial fundamentally unfair.  Fretwell v. Lockhart,  506 U.S. 364, 372 (1993); Strickland, 466 U.S. at 694.  Review of counsel's performance is "highly deferential" and there is a "strong presumption" that counsel rendered adequate assistance and exercised reasonable professional judgment."  United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1987); see Strickland, 466 U.S. at 690.  The question is not what defense counsel could have pursued but rather whether the choices made were reasonable.  Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  Strickland, 466 U.S. at 700.

### 1. Trial Counsel's Failure to Request Instruction on Voluntary Intoxication

A defendant charged with murder may introduce evidence of voluntary intoxication to show the absence of malice aforethought.  People v. Turk, 164 Cal. App. 4th 1361, 1375 ( 2008).  A defendant is entitled to an instruction of voluntary intoxication only when "there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's 'actual formation of specific intent.'"  People v. Williams, 16 Cal. 4th 635, 677 (1997).

The Court of Appeal concluded that there was no evidence to show Petitioner's intoxication precluded him from forming the specific intent to kill needed to support an attempted murder charge. (Lodgment 5 at 18.)  The court commented that Petitioner appeared capable of reasoned decisions and deliberate conduct.  (Id.)  Petitioner was released by the police after the bar fight with Courtney, made telephone calls to ascertain Courtney's address, changed into dark clothes and a beanie,  realized he could not drive, directed Arechiga to Courtney's home, noticed the parked car where Courtney was sitting as passenger, got out of the car, walked up to the passenger window of the other car and shot

1  Courtney five times.  (Id.)  Then, Petitioner got back into the car and told Arechiga to flee the scene.
2  (Id.)

3  The Court agrees that these facts demonstrate that Petitioner's specific intent to attempt to kill
4  Courtney was not impaired.  Petitioner made specific steps to locate Courtney and when he found
5  Courtney, he shot him.  There was nothing to indicate that intoxication affected his actions.  Based on
6  the facts before his trial counsel, the decision not to request jury instructions on intoxication was
7  reasonable.  See Babbitt, 151 F.3d at 1173.  Therefore, the Court concludes that Petitioner's counsel was
8  not deficient for not requesting jury instructions on intoxication.  See Strickland, 466 U.S. at 688.  Since
9  the state court's decision was not "contrary to, or involved an unreasonable application of, clearly
10 established Federal law," see 28 U.S.C. § 2254(d)(1), habeas relief is not available on this claim.  The
11 Court RECOMMENDS that Petitioner's claim for ineffective assistance of counsel be DENIED.

12 **2.      Trial Counsel's Failure to Request Instruction on Provocation**

13 In order to demonstrate provocation, the evidence must show that Petitioner formed the intent to
14 kill as a direct response to the provocation and acted immediately.  People v. Wickersham, 32 Cal. 3d
15 307, 329 (1983) overruled on other grounds in People v. Barton, 12 Cal. 4th 186, 201 (1995).

16 The Court of Appeal determined that there was insufficient evidence to show provocation to
17 support a provocation instruction. (Lodgment 5 at 17-18.)  The evidence shows that the shooting did not
18 take place immediately after the bar fight between Petitioner and Courtney and much time had passed to
19 allow Petitioner to cool down.  (Id.)  After the fight, the police detained Petitioner until he was "no
20 longer in an agitated state," Petitioner returned to the tattoo parlor, cleaned himself up, changed his
21 clothes, made telephone calls to locate Courtney's address and directed Arechiga to Courtney's house,
22 identified the parked car where Courtney was a passenger, approached the car window and shot
23 Courtney in the face and neck.  (Id.)  These facts do not show that Petitioner acted immediately after the
24 provocation.  Therefore, the Court concludes that Petitioner has failed to show that his trial counsel's
25 failure to request instruction for provocation was not reasonable.  See Babbitt, 151 F.3d at 1173.
26 Accordingly, the state court's decision was not "contrary to, or involved an unreasonable application of,
27 clearly established Federal law."  See 28 U.S.C. § 2254(d)(1).  Habeas relief is not available on this
28

claim and the Court RECOMMENDS that Petitioner's claim for ineffective assistance of counsel be DENIED.

### 3. Trial Counsel's Failure to Request Instruction on Lesser Included Offense of Attempted Voluntary Manslaughter

The Court of Appeal concluded that Petitioner's counsel did not render ineffective assistance of counsel for not requesting jury instructions on the lesser included offense of attempted voluntary manslaughter. As explained above, the trial court did not fail to instruct on the lesser included offense of voluntary manslaughter because there is no established federal law requiring the giving of a lesser included offense instruction in a non-capital case. Alternatively, Petitioner failed to show that he acted in the heat of passion to warrant an instruction of attempted voluntary manslaughter. For the same reasons, the Court concludes that Petitioner counsel was not deficient for not requesting jury instructions on the lesser included offense of attempted voluntary manslaughter since there were no facts to support such an instruction. See Strickland 466 U.S. at 688. Accordingly, the state court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law." See 28 U.S.C. § 2254(d)(1). Habeas relief is not available on this claim and the Court RECOMMENDS that Petitioner's claim for ineffective assistance of counsel be DENIED.

### 4. Trial Counsel's Failure to Request Instruction on Express Malice Aforethought

"Malice exists . . . only when an unlawful homicide was committed with the 'intention unlawfully to take away the life of a fellow creature' (§ 188), or with awareness of the danger and a conscious disregard for life." Rios, 23 Cal. 4th at 460. In Rios, the California Supreme Court held that where the issue of provocation or imperfect self-defense is presented in a murder case, the People must prove the absence of provocation or of any belief in the need for self-defense beyond a reasonable doubt to establish the malice element. Id. at 462.

The Court of Appeal concluded that Petitioner's counsel did not render ineffective assistance of counsel for not requesting jury instructions on express malice aforethought. As described above, there was no evidence of provocation that would justify a modified instruction on malice aforethought. Therefore, the Court concludes that Petitioner's counsel was not deficient for not requesting modified jury instructions on malice aforethought. See Strickland, 466 U.S. at 688. Accordingly, the state court's

decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law." See 28 U.S.C. § 2254(d)(1). Habeas relief is not available on this claim and the Court RECOMMENDS that Petitioner's claim for ineffective assistance of counsel be DENIED.

### F.     Violation of Equal Protection

Petitioner argues that the trial court denied him equal protection of the law by imposing a 25 years to life punishment for fire arm use during the commission of attempted murder causing great bodily injury pursuant to California Penal Code § 12022.53(d). He claims that the enhancement for attempted murder should not be greater than the enhancement for attempted voluntary manslaughter because both crimes require the same act and are committed with the identical intent.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. First, a petitioner establishes an equal protection claim by showing that he has been intentionally discriminated against on the basis of his membership in a protected class. See Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). If the action in question does not involve a suspect classification, a petitioner may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a petitioner must allege that: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.

The Court of Appeal denied his equal protection claim explaining that murder and voluntary manslaughter are separate and distinct crimes and not identical acts committed with identical intent as Petitioner argues. Therefore, the court concluded that a defendant charged with murder and a defendant charged with manslaughter are not similarly situated and Petitioner's equal protection claim fails.

California has long separated criminal homicide into two distinct classes. Rios, 23 Cal.4th at 460. Manslaughter is committed with a less culpable intent than murder, which requires malice. Id. Murder "is the unlawful killing of human being . . . with malice aforethought," Cal. Penal Code § 187,

and manslaughter "is the unlawful killing of a human being without malice." Cal. Penal Code § 192. Defendants charged with attempted murder and defendants charged with attempted voluntary manslaughter have different culpability and are not similarly situated.  Since Petitioner has not shown he is a member of an identifiable class, Petitioner's argument as to equal protection fails.  The Court of Appeal's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law."  See 28 U.S.C. § 2254(d)(1).  Habeas relief is not available on this claim and the Court RECOMMENDS that Petitioner's claim of violation of equal protection be DENIED.

## Conclusion

Based on the foregoing, the undersigned Magistrate Judge recommends that the petition for writ of habeas corpus be **DENIED** and **DISMISSED**.  This report and recommendation is submitted by the undersigned Magistrate Judge to the United States District Judge assigned to this case, pursuant to the provisions of Title 28, United States Code, section 636(b)(1).

**IT IS ORDERED** that no later than **September 26, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **October 10, 2008**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: August 28, 2008

Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court